Annick M. Persinger (CA Bar No. 272996)
*apersinger@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
10880 Wilshire Boulevard, Suite 1101
Los Angeles, California 90024
Telephone: (510) 254-6808
Facsimile: (202) 973-0950

Hassan A. Zavareei (CA Bar No. 181547)
*hzavareei@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
1828 L Street, Northwest, Suite 1000
Washington, District of Columbia 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

Stuart E. Scott (OH Bar No. 0064834)*
*sscott@spanglaw.com*
Kevin Hulick (OH Bar No. 0093921)*
*khulick@spanglaw.com*
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
Telephone (216) 696-3232
Facsimile (216) 696-3924

Jeremy Gilman (OH Bar No. 0014144)*
*jgilman@jeremygilman.attorney*
**JEREMY GILMAN, ATTORNEY, LLC**
7290 Ober Lane
Chagrin Falls, OH 44023
Telephone: (216) 789-8709
Facsimile: (216) 245-3797

*pro hac vice*

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENT SCARPO, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>NATROL, LLC,<br><br>Defendant. | Case No. 5:21-cv-01979-JFW-AS<br><br>**<u>CLASS ACTION</u>**<br><br>**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>1. VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code § 17200, *et seq.*;<br>2. VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT, Civil Code § 1750, *et seq.*; and<br>3. BREACH OF EXPRESS WARRANTY<br><br>**DEMAND FOR JURY TRIAL** |

1. Plaintiff Brent Scarpo brings this action on behalf of himself and all others similarly situated against Defendant Natrol, LLC ("Natrol") and states as follows:

**NATURE OF ACTION**

1. In all of its marketing materials, Natrol claims that its "Natrol Cognium® Memory" ("Cognium Memory") and "Natrol Cognium® Memory Extra Strength" ("Cognium Memory Extra Strength") (collectively the "Cognium Products") provide improved memory and recall. To make matters worse, to deceptively imply scientific significance and credibility, the Cognium Products' packaging also states that the Cognium Products contain the "#1 most clinically studied ingredient for memory."

2. Based on Natrol's representations, Plaintiff Scarpo and similarly situated California consumers like him purchased Cognium Products to improve their memory. Indeed, these efficacy claims are the only reason a consumer would purchase the Cognium Products.

3. Natrol's advertising claims, however, are provably false, misleading, and reasonably likely to deceive the public because reliable scientific evidence, including expert opinion and scientific studies, shows that the so-called active ingredient in the Cognium Products, silk protein hydrolysate, is no more effective than a placebo at improving memory.

4. The fundamental reason that the Cognium Products are not capable of having any effect beyond that of a placebo is that it is scientifically impossible for silk protein hydrolysate to provide the brain health and memory benefits that Natrol promises. Contrary to Natrol's uniform advertising claims, experts confirm that silk protein hydrolysate is digested in the human gastrointestinal track, the same way any other protein is ingested. Because the Cognium Products are digested they cannot have the effect on brain function claimed beyond that of a placebo pill—in fact, a sugar pill likely has more protein than the Cognium Product, which have less protein than a slice of bread.

5. Accordingly, Plaintiff brings this action for violation of California consumer protection laws and for breach of express warranty on behalf of himself and similarly situated persons to obtain a full refund for himself and for all other similarly situated purchasers in California for the worthless product they purchased at $20 a bottle, as well as for injunctive relief.

**JURISDICTION AND VENUE**

6. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and is a class action in which there are in excess of 100 class members and many members of the Class are citizens of a state different from Defendant.

7. This Court has personal jurisdiction over Defendant, because Defendant is authorized to conduct and do business in California. Defendant has marketed, promoted, distributed, and sold the Cognium Products in California, and Defendant has sufficient minimum contacts with this State and/or has sufficiently availed itself of the markets in this State through its promotion, sales, distribution, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

8. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while she resided in this judicial district. Venue is also proper under 18 U.S.C. 1965(a), because Defendant transacts substantial business in this District.

**PARTIES**

9. Plaintiff Brent Scarpo resides in Palm Springs, California. In early 2020, Plaintiff was exposed to and saw Natrol's misrepresentations regarding the brain function and memory benefits of Cognium by reading the Cognium Product label in a Wal-Mart store in Palm Springs, California. In reliance on the claims listed on the Product label, such as that the Product would improve memory and recall, in or around February 2020, Mr. Scarpo purchased Cognium. He paid approximately $20.00 for a 60 count 100 mg tablet bottle of Cognium because he believed the Product would provide

Plaintiff's First Amended Class Action Complaint
2

the advertised brain health and memory benefits. Thus, as a result of his purchase, Mr. Scarpo suffered injury in fact and lost money. Had Plaintiff known the truth about Natrol's misrepresentations and omissions, he would not have purchased Cognium. Plaintiff is not claiming physical harm or seeking the recovery of personal injury damages. If Natrol were to correct its misrepresentations and omissions, then Mr. Scarpo might consider purchasing Cognium in the future.

10. Defendant Natrol, LLC is a limited liability company organized and existing under the laws of the state of Delaware. Natrol is owned by Nyx Holdco, Inc., which is a Delaware corporation.

11. Natrol manufactures, advertises, markets, and distributes the Cognium Products to thousands of consumers across the country and in the State of California.

## FACTUAL ALLEGATIONS

### I. Natrol's Advertising and Sale of the Cognium Products

12. Since 2017, Natrol has distributed, marketed, and sold Cognium on a nationwide basis, including in California.

13. The Cognium Products are sold at a variety of grocery chains, retail stores, online stores, pharmacies, and low-cost retailers, including Wal-Mart.

14. Natrol sells two Cognium Products: (1) Cognium Memory, which bottles contain 60 tablets of 100 mg Cognium, and (2) Cognium Memory Extra Strength, which bottles contain 60 tablets of 200 mg Cognium.

15. "Cognium" refers to silk protein hydrolysate. In that regard, as stated on the Cognium Products' packaging, "Cognium Memory is powered by natural protein from silkworm cocoons."

16. As detailed herein, competent scientific evidence demonstrates that the silk protein hydrolysate in the Products is not capable of producing the improved memory and recall that Natrol promises purchasers. Natrol's advertising claims are provably false and misleading as a result.

17. Natrol has reaped enormous profits from its false advertising and sale of the Cognium Products.

**A. Natrol's Uniform Advertising of the Cognium Products**

18. Throughout its advertising of the Cognium Products, Natrol has consistently advertised that consuming the Cognium Products will improve memory, recall, and brain health.

19. Natrol has disseminated this message across a variety of media, including its website and online promotional materials, and most importantly, at the point of purchase on the front of the Cognium Products' packaging and labeling where it cannot be missed by consumers.[1]

20. Throughout the relevant time period, Natrol has packaged the Cognium Products using substantially similar and deceptive packages and labels with the memory and brain health benefit advertising messaging at issue.

21. The front of the Cognium Products' packaging and labeling states in large, bolded font that the Cognium Products are "Clinically Shown to Improve Memory and Recall." In addition, the front of the Cognium Products' packaging and labeling states in all capital letters, printed in large font that the Cognium Products are for "BRAIN HEALTH." What's more, the word "MEMORY" appears immediately below the word "Cognium" in large, bolded font on the front of the package. And the bottom left corner of the front label states in all capital letters, that Cognium is the "#1 Most Clinically Studied Ingredient for Memory." The word "memory" is set in a typeface much larger than the rest of the message, except for the number 1, which is also larger than the rest of the message.

---

[1] Indeed, even in online promotional materials, such materials show the front label of the product. For instance, the Natrol website prominently displays the product label when advertising Cognium. *See* https://www.natrol.com/store/natrol-cognium-memory-brain-health-tablets.

22. The front panels for the labels for each package of Cognium Memory and Cognium Memory Extra Strength appear substantially as follows:

 

23. Throughout the other packaging panels of the Cognium Products' packing panels, Natrol repeats and reinforces the false and deceptive brain health and memory improvement claim.

24. For instance, the side-panel packaging reinforced the false and deceptive brain health and memory claims, including that that "Cognium Memory keeps your mind sharp and your memory strong." Directly below that, the packaging states that "Cognium Memory is powered by a natural protein from silkworm cocoons. It has been shown to be effective in healthy adults in multiple clinical trials."

25. In addition, the side-panel packaging also claims that using Cognium results in "Improved Memory and Performance." This panel includes a bar chart that purports to show the results of a "Published study," whereby users of Cognium Memory experienced increases in "Memory Recall Efficiency," in just 21 days.

26. Furthermore, the side-panel packaging promises "Results in 4 weeks" in bold all caps font, making the claim that "[c]linical studies showed statistically significant improvement in memory and recall in 4 weeks or less when taken as directed by healthy adults."

**Clinical Results**

**Improved Memory and Performance**
100mg twice daily for three weeks - Published study

After 21 days *Statistically significant results

Memory Recall Efficiency score increased when 100 mg of the active ingredient in Cognium, was taken twice per day for three weeks by healthy adults. Detailed results can be found at: www.CogniumMind.com

**RESULTS IN 4 WEEKS**
Clinical studies showed statistically significant improvements in memory and recall in 4 weeks or less when taken as directed by healthy adults.†

**MONEY-BACK GUARANTEE**
100% satisfaction guaranteed or your money back. Visit www.CogniumMind.com for details.

www.CogniumMind.com  NATROL

27. Natrol's marketing representations in other media repeat and reinforce the false and misleading brain health benefit claims made on the packaging and labeling for the Cognium Products. For example, on their website, www.natrol.com/store/natrol-cognium-brain-health-tablets, Natrol claims that "Natrol Cognium keeps your mind sharp and your memory strong."[2] Natrol also claims that "multiple clinical studies have shown statistically significant improvements in memory and recall in healthy adults, in as little as four weeks."

---

[2] *See also* https://www.natrol.com/store/natrol-cognium-extra-strength-brain-health-tablets.

**B. Natrol's Representations are Deceptive and Misleading as Clinical Evidence Refutes Natrol's Representations**

28. Both Cognium Products have one active ingredient: silk protein hydrolysate.

29. Natrol's memory and brain claims are provably false and misleading, because, as Plaintiff's expert, Richard Bazinet, Ph.D., will testify, when Cognium is ingested, it is broken down in the digestive system by strong stomach acid and digestive enzymes. Plaintiff's expert will further opine that, even if some of the Cognium persists beyond the stomach and is absorbed into the blood, the blood-brain barrier, the natural gate-keeper of the brain, would keep out anything left of the substance. Ultimately, Plaintiff's expert concludes, Cognium cannot impact the brain because it *does not* absorb into the blood stream or cross the blood-brain barrier. Only if the active ingredient crossed the blood-brain barrier could it potentially cause any improvement whatsoever to brain performance.

30. Stated otherwise, as Plaintiff's expert will explain, silk protein hydrolysate is a protein. Like all proteins it is subjected to digestion in the human gastrointestinal track. During this process, silk protein hydrolysate is broken down into its amino acid constituent parts. Thus, by the time it reaches the bloodstream, it has become amino acids. This is no different than any other protein, such as those found in ordinary foods, like fish, turkey, or even bread.

31. Notably, the amount of protein ingested when a consumer takes Cognium is trivial to other foods. For instance, a slice of white bread contains 2.57 grams of protein. A single dose of Cognium Memory contains 100 mg of protein. Thus, a single slice of bread contains over 25 times the amount of protein as does a dose of Cognium Memory.

32. Moreover, as Plaintiff's expert will testify, even if silk protein hydrolysate was not fully digested and were to somehow enter the bloodstream, it would not be able to pass the blood-brain barrier. Most importantly, the only molecules that are able

to cross the blood brain barrier are those under .04-.06 kilodaltons and soluble in fat not water. Silk protein hydrolysate does not have a molecular mass that small. Rather, like most proteins, silk protein hyrdolysate is much too large to cross the blood brain barrier and is soluble in water, not fat. As a result, it has no effect on a user's memory.

33. On its website, Natrol brandishes seven studies that claim to support its claim that Cognium is "clinically shown to improve memory and recall in healthy adults." All of these studies suffer from serious deficiencies such that they do not support the claim that Cognium is "clinically shown to improve memory and recall in healthy adults."

34. A 2004 study entitled "Association between Cerebral Blood Flow and Cognitive Improvement Effect by *B. mori* Extracted Component" makes the claim that administration of 400 mg of Cognium—4 times the amount in Cognium Memory—twice a day for three weeks, resulted in a 9-point increase in IQ among study participants. The study consisted of four individuals and did not make use of a control group.[3] This falls well below anything that would be sufficient to show that an ingredient is "clinically proven" to do anything.

35. The other 6 studies are similarly flawed.

36. Five of the studies, while using sample sizes larger than four, still employ sample sizes that are too small to provide any scientific value—in some instances it is not even clear how many individuals actually consumed Cognium.

37. Another 2004 study, this one entitled "The Role of BF-7 on Enhancement of Memory and Cognitive Function" only reported results for 25 individuals who were "recruited among elderly people who visit a day care center in Seoul dementia [sic]."[4]

---

[3] The study is available on Natrol's website: https://www.natrol.com/images/tips/pdf/i_BF7-Mental-Human-po-Lee-KorJSericSci-2004-translated-hilite.pdf.

[4] The study is available on Natrol's website: https://www.natrol.com/images/tips/pdf/c_BF7-Memory-Human-po-Kim-KorJAnat-2004-translated-hilite.pdf

38. A third 2004 study is likewise unreliable, because it is inconsistent in identifying even the number of subjects tested. In the abstract and first page of the article "The Role of BF-7 on Neuroprotection and Enhancement of Cognitive Function," the study claims that 50 high school students went through the Rey Kim and K-WAIS test; however, page three then claims that only 40 high school students underwent these tests.[5]

39. Yet another study from 2004, "BF-7 Improved Memory Function and Protected Neuron from Oxidative Stress" uses 66 individuals, broken into three groups, though the study fails to identify the sizes of the respective groups.[6]

40. Two studies broke its participants into three groups (placebo, low dose, and high dose) with each group having between 32 and 34 persons—"The Improvement of Learning and Memory Ability of Persons by BF-7"[7] and "The Effect of Bf-7 on the Ischemia-Induced Learning and Memory Deficits."[8] Due to this breakdown, while larger than the other studies, these numbers are still much too small to show any actual significance. Furthermore, one of the studies, "The Effect of BF-7 on the Ischemia Inducted Learning and Memory Deficits," fails to state how many doses of Cognium each individual was given.

41. Finally, "The Improvement of Short- and Long-term Memory of Young Children by BF-7" only contains an abstract of the article in English. The remainder of

---

[5] The study is available on Natrol's website: https://www.natrol.com/images/tips/pdf/b_BF7-Memory-Human-po-Chae-KorJPhysiolPharm-2004-hilite.pdf.

[6] The study is available on Natrol's website: https://www.natrol.com/images/tips/pdf/e_BF7-Memory-Human-po-Lee-KorJPhysAnthropol-2004-translated-hilite.pdf.

[7] The study is available on Natrol's website: https://www.natrol.com/images/tips/pdf/d_BF7-Memory-Human-po-Lee-KorJPhyPharm-2004-hilite.pdf.

[8] The study is available on Natrol's website: https://www.natrol.com/images/tips/pdf/h_BF7-Mental-Human-po-Lee-KorJAnat-2005-translated-hilite.pdf.

the article is written in Korean and has not been translated. But the study itself is only limited to children, and the abstract fails to show the number of children in the study or the actual results of any tests. Rather, the abstract simply speaks in broad terms. For instance, the abstract claims "the ability of memory application and awareness of complex thing [sic] were also significantly improved." Such a vague explanation fails to provide any evidence that the conclusion is valid.[9]

42. In short, none of the studies on Natrol's website provide any scientific support for the claim that Cognium is "clinically shown to improve memory and recall in healthy adults." Rather, they are simply an attempt to apply a deceiving scientific sheen onto a baseless advertising claim that competent scientific evidence refutes.

## CLASS DEFINITION AND ALLEGATIONS

43. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for himself and all members of the following class of similarly situated individuals (the "Class"):

> All people who purchased Cognium Memory or Cognium Memory Extra Strength for personal or household purposes in California within the applicable statute of limitations through the date of class certification.

44. The following individuals are excluded from the Class: Natrol, Natrol's officers, directors, and employees, and those who purchased Cognium Memory or Cognium Memory Extra Strength for the purpose of resale.

### A. Numerosity

45. Cognium Memory is sold throughout California such that the Class is so numerous that joinder of all members of the Class is impracticable.

---

[9] The study is available on Natrol's website: https://www.natrol.com/images/tips/pdf/k_The_Improvement_of_Short_and_Long-term_Memory_of_Y.pdf.

**B. Common Questions of Law and Fact Predominate**

46. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include but are not limited to, the following:

    a. Whether the claims discussed above are true, or are misleading, or objectively reasonably likely to deceive;

    b. Whether Natrol's alleged conduct violates public policy;

    c. Whether the alleged conduct constitutes violations of the laws asserted;

    d. Whether Natrol engaged in false or misleading advertising;

    e. Whether Plaintiff and the Class members have sustained monetary loss and the proper measure of that loss; and

    f. Whether Plaintiff and Class members are entitled to other appropriate remedies.

**C. Typicality**

47. Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above and were subject to Natrol's deceptive brain health and memory claims that accompanies each and every Cognium Product that Natrol sold. Plaintiff advances the same claims and legal theories on behalf of herself and all members of the Class.

**D. Adequacy**

48. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

**E. Superiority**

49. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment

suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Natrol. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

50. The Class may also be certified because Natrol has acted or refused to act on grounds generally applicable to the Class.

51. Unless a Class is certified, Natrol will retain monies received as a result of its conduct that were taken from Plaintiff and Class members.

## COUNT I

### Violation of the Consumer Legal Remedies Act

### Civil Code § 1750, *et seq.*

52. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

53. This cause of action is brought pursuant to the Consumer Legal Remedies Act, California Civil Code § 1750 (the "Act"). Plaintiff is a "consumer" as defined by California Civil Code § 1761(d). Natrol's Cognium Products are "goods" within the meaning of the Act.

54. Natrol violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with

Plaintiff and the Class which were intended to result in, and did result in, the sale of the Cognium Products:

    (5)    Representing that [the Cognium Products have] … approval, characteristics, … [and] benefits … which [they do] not have …

    (7)    Representing that [the Cognium Products are] of a particular standard, quality or grade … if [they are] of another.

    (9)    Advertising goods … with intent not to sell them as advertised.

    (16)    Representing that [the Cognium Products have] been supplied in accordance with a previous representation whey [they have] not.

55. Natrol violated the Act by representing and failing to disclose material facts on the Cognium Products' labeling and packaging and associated advertising, as described above, when it knew, or should have known, that the representations were false and misleading and that the omissions were of material facts it was obligation to disclose.

56. Pursuant to § 1782(d) of the Act, Plaintiff and Class seek a court order enjoining the above-described wrongful acts.

57. Pursuant to § 1782 of the Act, Plaintiff sent notification, a true and correct copy of which is attached hereto as **Exhibit A**, to Natrol in writing by certified mail of the particular violations of § 1770 of the Act and demanded that Natrol rectify the problems associated with the actions detailed above and give notice to all affected consumers of Natrol's intent to so act.

58. The notice period having run since Plaintiff sent notification as required by the CLRA, Plaintiff now seeks actual, punitive and statutory damages as appropriate if Natrol as Natrol has not rectified the notified issues within 30 days of the date of written notice pursuant to § 1782 of the Act.

59. Pursuant to § 1780(d) of the Act, attached hereto as **Exhibit B** is the affidavit showing that this action has been commenced in the proper forum.

## COUNT II

**Violation of Business & Professions Code § 17200, *et seq.***

60. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

61. Business & Professions Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising." For the reasons discussed above, Natrol has violated each of these provisions of Business & Professions Code § 17200.

62. In the course of conducting business, Natrol committed "unlawful" business practices by violating the CLRA, and breaching express warranties.

63. Natrol's actions also constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Natrol engaged in false advertising, misrepresented, and omitted material facts regarding the Cognium Products, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

64. For the reasons detailed above, Natrol's actions are "fraudulent" because Natrol falsely and misleadingly claims that the Cognium Products improve memory and brain health and omits the true nature of the Products.

65. As stated in this complaint, Plaintiff alleges violations of consumer protection, unfair competition, and truth in advertising laws in California and other states, resulting in harm to consumers. Natrol's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct toward consumers. This conduct constitutes violations of the unfair prong of Business & Professions Code § 17200, *et seq.*

66. There were reasonably available alternatives to further Natrol's legitimate business interests other than the conduct described herein.

67. Business & Professions Code § 17200, *et seq.*, also prohibits any "fraudulent business act or practice."

68. Natrol's actions, claims, nondisclosures, and misleading statements, as more fully set forth above, were also false, misleading, and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200, et seq.

69. Natrol's advertising, labeling, and packaging as described herein also constitutes unfair, deceptive, untrue, and misleading advertising.

70. Natrol's conduct caused and continues to cause substantial injury to Plaintiff and the other Class members. Plaintiff has suffered injury in fact and has lost money as a result of Natrol's unfair conduct.

71. As a result of its deception, Natrol has been able to reap unjust revenue and profit.

72. Plaintiff, on behalf of himself, and all others similarly situated, and the general public, seeks an injunction enjoining Natrol from continuing its misleading marketing campaign and restitution of all money obtained from Plaintiff and the members of the Class collected as a result of unfair competition, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

## COUNT III

### Breach of Express Warranty

73. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

74. Plaintiff brings this claim individually and on behalf of the Class.

75. Section 2-313 of the Uniform Commercial Code provides that an affirmation of fact or promise, including a description of the goods, becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the promise and to the description.

76. At all times, California and other states have codified and adopted the provisions in the Uniform Commercial Code governing the express warranty of merchantability.

   a. Plaintiff and each member of the Class formed a contact with Natrol at the time Plaintiff and the other Class members purchase the Cognium Products. The terms of the contract include the brain health and memory promises made by Natrol on the Cognium Products' labels and packaging, as described above. These representations constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Natrol on the other. Natrol made the following express warranties that it breached when it sold a dummy pill to consumers: "Clinically Shown to Improve Memory and Recall;" "Enhances mental agility by improving cognitive function;" "Improved memory and performance;" and "Results in 4 weeks."

77. All conditions precedent to Natrol's liability under this contract have been performed by Plaintiff and the Class.

78. Natrol has breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing the Cognium Products that could provide the brain health and memory benefits as represented and described above.

79. As a result of Natrol's breach of its warranty, Plaintiff and the Class have been damages in the amount of the purchase price of the Cognium Products they purchased.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A. Certifying the Class as requested herein;

B. Enjoining Natrol's misleading marketing campaign;

C. Awarding Plaintiff and the proposed Class members damages, including punitive damages;

|   |   |   |
|---|---|---|
| 1 | D. | Awarding restitution and disgorgement of Natrol's revenues to Plaintiff and the proposed Class members; |
| 3 | E. | Awarding attorneys' fees and costs; and |
| 4 | F. | Providing such further relief as may be just and proper. |

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable.

Date: January 20, 2022          By:  /s/ *Annick M. Persinger*

> Annick M. Persinger (CA Bar No. 272996)
> *apersinger@tzlegal.com*
> **TYCKO & ZAVAREEI LLP**
> 10880 Wilshire Boulevard, Suite 1101
> Los Angeles, California 90024
> Telephone: (510) 254-6808
> Facsimile: (202) 973-0950
>
> Hassan A. Zavareei (CA Bar No. 181547)
> *hzavareei@tzlegal.com*
> **TYCKO & ZAVAREEI LLP**
> 1828 L Street, Northwest, Suite 1000
> Washington, District of Columbia 20036
> Telephone: (202) 973-0900
> Facsimile: (202) 973-0950
>
> Stuart E. Scott (OH Bar No. 0064834)*
> *sscott@spanglaw.com*
> Kevin Hulick (OH Bar No. 0093921)*
> *khulick@spanglaw.com*
> **SPANGENBERG SHIBLEY & LIBER LLP**
> 1001 Lakeside Avenue East, Suite 1700
> Cleveland, OH 44114
> Telephone (216) 696-3232
> Facsimile (216) 696-3924
>
> Jeremy Gilman (OH Bar No. 0014144)*
> *jgilman@jeremygilman.attorney*
> **JEREMY GILMAN, ATTORNEY, LLC**
> 7290 Ober Lane
> Chagrin Falls, OH 44023
> Telephone: (216) 789-8709
> Facsimile: (216) 245-3797
>
> *pro hac vice*
>
> *Attorneys for Plaintiff*